IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL RITZMANN,<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO. 07-176 |
| vs. | §<br>§<br>§ | |
| NALU KAI, INC. d/b/a<br>NAISH INTERNATIONAL and<br>DA KINE HAWAII, INC.<br>Defendants. | §<br>§<br>§<br>§ | JURY DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT NALU KAI INCORPORATED
D/B/A NAISH SAILS HAWAII'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

TO THE HONORABLE SAMUEL B. KENT, UNITED STATES DISTRICT JUDGE

Plaintiff Michael Ritzmann hereby files this Response to Defendant Nalu Kai, Inc. d/b/a Naish Sails Hawaii's ("Naish") Motion to Dismiss for Lack of Personal Jurisdiction.

### I. PRELIMINARY STATEMENT

The Fifth Circuit, along with other courts, permits a party facing a motion to dismiss for lack of personal jurisdiction to conduct jurisdictional discovery where there is uncertainty concerning the defendant's contacts with the forum state. This case presents precisely such an instance, and accordingly, Plaintiff should be allowed to conduct jurisdictional discovery before the Court rules on Defendant Naish's motion.

### II. PROCEDURAL AND FACTUAL BACKGROUND

On or about July 9, 2005, Plaintiff was injured in a kitesurfing accident at Galveston State Park, Texas. At the time of the accident, Plaintiff was using the following products: (1) a "pivoting hammerhead kite bar" designed, manufactured and marketed by Da Kine; a "fusion" seat harness (hereinafter, "Da Kine Harness") designed, manufactured and marketed

by Da Kine; and (3) a 2002 "standard" control bar (hereinafter, "Naish Control Bar") that was designed, manufactured and marketed by Naish.

On February 5, 2007, Plaintiff filed his Original Petition in the 122nd District Court of Galveston County, Texas, asserting claims of strict products liability, negligence and violation of the Texas Deceptive Trade Practices Act (DTPA) against Defendants premised on the allegation that the Da Kine Spreader Bar, the Da Kine Harness nor the Naish Control Bar were not equipped with a quick release mechanism that would have prevented this horrible incident. On or about March 30, 2007, Defendant Da Kine filed a notice of removal, which functioned to remove the instant action to this Court. Thereafter, on April 18, 2007, Defendant Naish filed it Motion to Dismiss for Lack of Personal Jurisdiction, and Original Answer to Plaintiff Michael Ritzmann's First Amended Petition Subject Thereto (hereinafter, "Defendant Naish's Motion").

### III. STANDARD OF REVIEW

When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction exists.[1] This burden is not a heavy one, however – *prima facie* evidence of personal jurisdiction will suffice.[2] In making its determination, the Court is to consider, *inter alia*, the pleadings, affidavits, interrogatories, depositions, oral testimony and exhibits.[3] The allegations found in the plaintiff's petition are to be taken as true to the extent that they are not contradicted by

---

[1] *See Bullion v. Gillespie, M.D.*, 895 F.2d 213, 216-17 (5th Cir. 1990) ("[W]here, as here, the alleged facts are disputed, the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court.") (citation and internal quotation omitted).
[2] *See WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).
[3] *See Command-Aire v. Ontario Mechanical Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992).

2

affidavits adduced by defendant.[4] For the purposes of this inquiry, any genuine, material fact issues are to be resolved in favor of plaintiff in deciding whether a *prima facie* basis for personal jurisdiction exists.[5]

## IV. ARGUMENTS & ANALYSIS

A nonresident defendant is amenable to personal jurisdiction if: (1) the state's long-arm statute applies and (2) the due process clause of the fourteenth amendment is satisfied.[6] However, because Texas's long-arm statute has been interpreted to extend to the limits of due process, this two-step inquiry actually collapses into one question: Does the exercise of personal jurisdiction over the defendant comport with due process?[7]

Due process requires that before a court can exercise personal jurisdiction over a nonresident defendant, there must first be a *prima facie* showing that: (1) the defendant purposefully established "minimum contacts" with the forum state; and (2) allowing the suit to proceed in the forum state would not offend "traditional notions of fair play and substantial justice."[8] There are two forms of minimum contacts – general jurisdiction, which arises where a nonresident defendant's contacts with the forum state are "continuous and systematic"; and specific jurisdiction, which is created where the defendant purposefully

---

[4] *See Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982).
[5] *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).
[6] *See Bullion*, 895 F.2d at 215 ("That is, the 'state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United State Constitution.") (citing *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989).
[7] *See id.* at 216 ("That being so, a nonresident's amenability to personal jurisdiction under the Texas long-arm statute collapses into a federal-style inquiry as to whether jurisdiction comports with federal constitutional guarantees.") (citation omitted).
[8] *See id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105, 107 S.Ct. 1026, 1029 (1987)).

3

directs its activities at the forum state and the litigation results from an alleged injury that arises out of or relates to those activities.[9]

### A. Plaintiff is entitled to jurisdictional discovery.

Where a party is confronted with a motion to dismiss on grounds of personal jurisdiction, an opportunity for jurisdictional discovery is <u>required</u>.[10] More specifically, jurisdictional discovery is justified where a party can demonstrate that its jurisdictional allegations, if supplemented, would support an exercise of personal jurisdiction by the court.[11] Of course, with respect to minimum contacts, a party is not required to show that they exist before being permitted to conduct jurisdictional discovery.[12] Rather, the party need only show that the record before the court is inadequate to ascertain the veracity of the parties' conflicting contentions.[13]

### B. Jurisdictional discovery will reveal the nature and extent of Defendant Naish's distribution and marketing systems.

Here, there is considerable uncertainty about the nature and breadth of Defendant Naish's marketing and distribution efforts. Plaintiff Ritzmann asserts that Defendant Naish purposefully directed the marketing and distribution of his Naish Control Bar, and products like it, to the forum state. And indeed, the Naish Control Bar ultimately <u>did</u> reach Ritzmann, who resides in Texas. Defendant Naish, meanwhile, contends, on the basis of its own self-

---

[9] See *Kelly v. Syria Shell Petroleum Dev., B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).
[10] See *id.* at 855 (stating that in the face of a jurisdictional-based motion to dismiss, "an *opportunity* for discovery is required.") (citing *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 n.4 (5th Cir. 1985)) (emphasis in original). See also *Animale v. Sunny's Perfume, Inc.*, Civil Action No. 5:07-cv-13, 2007 WL 760373, at *5 (S.D. Tex. Mar. 8, 2007) ("The Fifth Circuit has stated that *a plaintiff is entitled to some discovery* to establish jurisdiction.") (citing *Kelly*, 213 F.3d at 856) (emphasis added).
[11] See *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified.") (citation omitted).
[12] See *Animale*, 2007 WL 760373, at *6 ("Of course, a plaintiff need not *prove* minimum contacts as a prerequisite to jurisdictional discovery . . . .") (emphasis in original).
[13] See *GTE New Media Servs. Inc.*, 199 F.3d at 1351-52 (permitting jurisdictional discovery where the record was inadequate to ascertain the veracity of parties' contentions).

4

serving and conclusory statement, that it has not availed itself to this forum, and that this case should therefore be dismissed.

However, where a nonresident manufacturer purposefully utilizes a distribution system that it knew or should have known would result in the manufacturer's product reaching Texas in the normal course of the distribution chain, the manufacturer is subject to specific jurisdiction in Texas – even if the at-issue product is manufactured, assembled, sold and delivered to the distributor outside of Texas.[14] Accordingly, Plaintiff requests jurisdictional discovery concerning Defendant's distribution and marketing system. If, as Plaintiff anticipates, this discovery reveals that Defendant was indirectly distributing and marketing the at-issue product to Texas, this Court will have a basis to assert personal jurisdiction over Defendant.[15] Indeed, no more evidence would be required.[16]

## V. CONCLUSION

For the foregoing reasons, Defendant Naish's motion to dismiss should be stayed pending the completion of a jurisdictional discovery period.

Respectfully submitted,

LAW OFFICES OF PRICE AINSWORTH, P.C.
48 EAST AVENUE
AUSTIN, TEXAS 78701

---

[14] *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 202 (5th Cir. 1980) (finding *in personam* jurisdiction where, although defendant manufactured, assembled, sold and delivered its product to a distributor in Japan, defendant "should have known that its products would reach Texas in the normal course of the distribution chain.").

[15] *See id.* at 200 ("By utilizing the distribution network in the United States established by Scripto, [defendant] has made efforts to serve indirectly the market for its product in Texas. . . . [Accordingly, t]he instant case fits like a glove the commercial context and the manufacturer's distribution plan for the marketing of its product contemplated by the *World-Wide Volkswagen* dictum.").

[16] *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction.").

5

512+474-6061
512+474-1605 fax

By: _____
Price Ainsworth
State Bar No. 00950300

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been delivered to the following counsel of record as indicated below on this 2nd day of May, 2007.

_____
Price Ainsworth