UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL RITZMANN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION G-07-176 |
| | § | |
| NALU KAI, INC. d/b/a NAISH | § | |
| INTERNATIONAL and DA KINE | § | |
| HAWAII, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER AND OPINION**

Pending before the court is defendant Nalu Kai, Inc.'s, motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). After considering the parties' arguments, the totality of the circumstances, and the applicable law, the defendant's motion is DENIED.

**I. BACKGROUND**

On the morning of July 9th, 2005, plaintiff Michael Ritzmann, a resident of Galveston County, was kitesurfing at Galveston State Park. (Dkt. 1, App. A at 25, 27). Among the equipment Ritzmann used that morning was a Pivoting Hammerhead Kite Bar, a "Fusion" Seat Harness, and a 2002 "Standard" Control Bar. (*Id.* at 26-27). Defendant Da Kine Hawaii, Inc. ("Da Kine"), a Hawaii corporation with its principle place of business in Oregon, produced the kite bar and seat harness. (Dkt. 1 at 2; Dkt. 1, App. A at 26). Defendant Nalu Kai, Inc., a Delaware corporation with its principle place of business in Hawaii, doing business as Naish Sails Hawaii ("Naish"), produced the control bar. (Dkt. 1 at 2; Dkt. 1, App. A at 26). Ritzmann purchased all three products prior to that morning. However, neither Ritzmann, Da Kine, nor Naish proffered to the court any

information regarding when or where these products were purchased. (Dkt. 1, App. A at 26).

That day, while Ritzmann attempted to land his kite on the beach, the loop on his control bar inadvertently hooked onto his kite bar. (Dkt. 1, App. A at 27). Ritzmann attempted to release his kite but remained attached due to the inadvertent connection. (*Id.*). The kite lurched forward, pulled Ritzmann down, and dragged him along the beach. (*Id.*). While being dragged, Ritzmann was knocked unconscious and injured his knee. (*Id.*).

On February 5, 2007, Ritzmann filed this products liability action in the 122d Judicial District Court of Galveston County, Texas. (Dkt.1, App. A at 4). He amended his original petition in March. (*Id.* at 25). Da Kine answered with a general denial, then removed the case to the U.S. District Court for the Southern District of Texas, Galveston Division, under diversity jurisdiction, 28 U.S.C. § 1332(a)(1). (Dkt. 1 at 1-2; 1, App. A at 38). Naish moved the court to dismiss Ritzmann's claim for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and then answered Ritzmann's complaint. (Dkt. 7). Ritzmann responded to Naish's motion to dismiss requesting leave to conduct jurisdictional discovery. (Dkt. 9). The court granted Ritzmann's request. (Dkt. 11). Upon reassignment, this court granted Ritzmann a continuance until September 7, 2007. (Dkt. 18, 23). On September 6, 2007, Ritzmann responded to Naish's motion to dismiss. (Dkt. 25). Naish replied five days later. (Dkt. 26).

## II. ANALYSIS

Naish seeks to dismiss Ritzmann's claim under Federal Rule of Civil Procedure 12(b)(2) arguing that Ritzmann failed to demonstrate this court's jurisdiction over Naish.

**1) Standard of Review**

When a defendant raises an objection to the court's personal jurisdiction, the burden is on the plaintiff to make a *prima facie* showing that jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Where a question of fact is present, that question will be resolved in favor of the plaintiff. *Id.*

Personal jurisdiction over a nonresident defendant requires that two conditions be met: (1) the defendant "must be amenable to service of process under the forum state's long-arm statute"; and, (2) "the assertion of jurisdiction over the nonresidents must be consistent with the Fourteenth Amendment due process clause." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). "The Texas long-arm statute has been interpreted to extend to the limits of due process." *Id.* Therefore, the issue here rests solely on whether the Fourteenth Amendment's due process requirements have been satisfied.

The Supreme Court, in *International Shoe Co. v. Washington*, created a two-prong test to determine if due process has been satisfied: (1) the defendant must have "certain minimum contacts" with the state; and, (2) "the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citing *Int'l Shoe Co.*, 326 U.S. at 316). The minimum contacts prong has been further divided into general and specific jurisdiction. *Ruston Gas Turbines, Inc.*, 9 F.3d at 418.

**2) Jurisdiction**

    *a) General Jurisdiction*

General jurisdiction exists when a defendant's contacts with the forum state are "continuous

and systematic." *Id.* at 419; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Such contacts must be more than single or isolated activities. *Int'l Shoe Co.*, 326 U.S. at 317. Thus, for example, a corporation's purchase of helicopters and subsequent employee training in Texas were not enough to establish general jurisdiction. *Hall*, 466 U.S. 408. However, a court must evaluate the "contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Where "a number of contacts are independent of one another, if they occur with such frequency that the contacts in general are 'continuous and systematic,' there is general jurisdiction." *Id.*

Ritzmann argues that the court may exercise general jurisdiction over Naish for two reasons. (Dkt. 25 at 9-12). First, because Naish's distribution arrangement created long-standing and possibly substantial contacts with Texas. (*Id.* at 10). And second, because Naish directly solicited business within Texas. (*Id.* at 12). Considering these out of order, the second reason is based on a single trip by Naish employees to South Padre Island, Texas to promote Naish's products at a trade show. (*Id.* at 12). As seen in *Hall*, such a singular event is insufficient to create general jurisdiction. *See Hall*, 466 U.S. 408.

Ritzmann's first reason is slightly more complex. North Sports, Inc. ("North Sports") was Naish's U.S. distributor from 1995 until December 31, 2006. (Dkt. 25, Ex. B at 13:3-4). Texas was part of North Sports' territory. (*Id.* at 26:25-27:4). However, the parties have not presented any data indicating whether sales to Texas were sufficient to be considered continuous or substantial during that time. Ritzmann asks the court to find, for the purposes of this motion, that Naish's sales are

4

substantial because Ritzmann requested Naish's sales information in discovery[1] and Naish failed to provide it. (Dkt. 25 at 11; Dkt. 25, Ex. B at 21:12-22:4). Naish objected to the request for multiple reasons, the most notable being that "the documents requested would not indicate or document sales of defendant's products within the State of Texas." (Dkt. 25, Ex. C at 6). When a party objects to a discovery request, the discovering party bears the burden of moving to compel an answer. Fed. R. Civ. P. 37(a)(2)(B). "An objection . . . is not passed on by a court unless a motion to compel under Rule 37(a) is made." *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 552 (5th Cir. 1980). And where a discovering party fails to move the court to compel an answer, the party waives its right to that discovery. *Calderon v. Presidio Valley Farmer's Ass'n*, 863 F.2d 384, 389 (5th Cir. 1989). Ritzmann suggests that Naish should not benefit from failing to produce the requested documents. (Dkt. 25 at 11). However, Ritzmann had the burden to move to compel Naish's answer and he failed to do so. With only the single trade show that Naish attended as evidence to consider, the court cannot find that general jurisdiction exists.

### b) Specific Jurisdiction

A forum state may exercise specific jurisdiction over a "defendant when the lawsuit arises from or relates to the defendant's contact with the forum state." *Ruston Gas Turbines, Inc.*, 9 F.3d at 418-19; *see also Hall*, 466 U.S. at 414. A lawsuit "relates to" the defendant's contacts when: (1) the plaintiff purchased the defendant's product outside of the forum state; (2) the plaintiff was injured in the forum state; and, (3) the defendant's products are available in the forum state. The Supreme Court has held:

---

[1] Ritzmann requested Naish "produce all charts, balance sheets, income statements, tax returns and similar financial documents in your possession documenting sales of Defendant's products outside of the State of Hawaii in the period between 2000 and the present." (Dkt. 25, Ex. C at 6).

> [I]f the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suits in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Simply stated, where a plaintiff can show that the offending product was available for sale in the forum state, he is not required to prove that he actually purchased the product in the forum state.

*Volkswagen* is the most notable case concerning specific jurisdiction in regard to products liability claims. *See World-Wide Volkswagen Corp.*, 444 U.S. 286. In *Volkswagen*, the plaintiff purchased a vehicle in New York and drove it to Oklahoma. *Id.* at 288. While there, the plaintiff was involved in a car accident and the car caught fire, injuring the passengers inside. *Id.* Consequently, the plaintiff brought suit against Volkswagen in Oklahoma, arguing that the Oklahoma court could exercise specific jurisdiction over Volkswagen. *Id.* The Court, however, found that no specific jurisdiction existed. *Id.* at 299. Volkswagen carried on no business in Oklahoma, nor did it avail itself "of the privileges and benefits of Oklahoma law." *Id.* at 295. Moreover, the vehicle reached the forum state due to the unilateral acts of the plaintiff, not through the stream of commerce. *See id.* at 298. The Court noted that the foreseeability that a product would find its way into the forum state "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* However, foreseeability is relevant where "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Id.* at 297. Therefore, the Court found it foreseeable for a defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state" to be subject to that state's jurisdiction. *Id.* at 298.

The Supreme Court modified *Volkswagen* in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), requiring more than mere foreseeability in establishing a court's personal jurisdiction over a party. However, because *Asahi* was decided by a plurality, rather than a majority, of the Court, the Fifth Circuit continues to follow *Volkswagen*. *Ruston Gas Turbines, Inc.*, 9 F.3d at 420. "[T]he Fifth Circuit . . . [interprets *Volkswagen*] to hold that mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* at 419. Pursuant to Fifth Circuit precedent, Ritzmann need only show that Naish placed the control bar into the stream of United States commerce, made no attempt to limit its sale in Texas, and expected, or at least should have foreseen, that the control bar would be sold in Texas. *See Ruston Gas Turbines, Inc.*, 9 F.3d 415; *see also Williamson v. Petroleum Helicopters, Inc.*, 31 F. Supp. 2d 548, 552 (S.D. Tex. 1998); *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081 (5th Cir. 1984); *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383 (5th Cir. 1989).

Ritzmann argues that the distribution agreement between Naish and North Sports allowed nation-wide sale of the control bar with no restriction as to its sale in Texas. (Dkt. 25 at 7). Therefore, Ritzmann concludes that it was foreseeable for the control bar to end up in Texas. (*Id.*). Moreover, Ritzmann argues that Naish actually knew its products were being sold in Texas because its website listed three Texas retailers selling Naish's products. (*Id.* at 8).

Naish's distribution agreement gave North Sports sole distribution rights in the United States, excluding Hawaii, for all Naish's kiteboarding products. (Dkt. 25, Ex. A at §§ 1-2). Without question, the agreement allowed sales in Texas. (*See* Dkt. 26 at 2-3; Dkt. 25 at 7; Dkt. 25, Ex. B, Dep. 39:22-23). Ritzmann argues that the distribution agreement reasonably apprised Naish that its

7

products would be sold in Texas. (Dkt. 25 at 7). Ignoring Fifth Circuit precedent, Naish claims that it had no expectation that customers would purchase its products in Texas because it did not select, pre-approve, or retain any control over the retailers to whom North Sports sold Naish's products. (Dkt. 26 at 3). However, in *Bean Dredging*, the Fifth Circuit found specific jurisdiction where the defendant introduced products into the stream of commerce but did not control the distribution system. *Bean Dredging Corp.*, 744 F.2d at 1085; *see also Williamson*, 31 F. Supp. 2d at 552. The defendant in *Bean Dredging* manufactured steel castings that were used as a component part in the manufacture of cylinders. *Bean Dredging Corp.*, 744 F.2d 1082. Those cylinders were then used in the production of larger equipment, in that case a dredge. *Id.* The defendant sold the castings to the cylinder manufacturer with no knowledge of what the end product would be or where it would be sold. *Id.* The defendant also sold to numerous other manufacturers that incorporated the castings into equipment sold throughout the country. *Id.* Therefore, the defendant "had every reason to believe its product would be sold to a nation-wide market." *Id.* at 1085.

Finally, Naish's website listed three Texas retailers under the "Where to Buy" section.[2] (Dkt. 25 at 8). However, whether Naish knew of these retailers is disputed. (*See* Dkt. 26 at 3). Regardless, the fact that the retailers were listed on Naish's website bolsters the argument that Naish could foresee the sale of its products in Texas. The court finds that specific jurisdiction exists because it was foreseeable that the stream of commerce would carry Naish's products into Texas and Naish made no attempt to limit Texas sales.

### c) *Traditional Notions of Fair Play and Substantial Justice*

The second prong of the due process test requires that the "exercise of jurisdiction over

---

[2] http://www.naishsails.com/buy/dealers.php

8

defendant does not offend traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc.*, 9 F.3d at 418. "[W]here a defendant who purposefully . . . directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). These other considerations are: the defendant's burden; the forum state's interests; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and, the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc.*, 9 F.3d at 421; *see also World-Wide Volkswagen Corp.*, 444 U.S. at 292.

In its motion, Naish does not rely upon nor mention this prong of the due process analysis. Nevertheless, the court is bound to consider whether exercising jurisdiction comports with traditional notions of fair play and substantial justice. *See Ruston Gas Turbines, Inc.*, 9 F.3d at 418. Certainly, Naish, a Delaware corporation with its principle place of business in Hawaii, will be burdened if required to litigate the matter in Texas. However, that consideration is trumped by Ritzmann's interest in litigating this matter in his home state where he may obtain convenient and effective relief. Naish employees have previously traveled to Texas to promote its kiteboarding products. Requiring them to repeat the trip for litigation arising from the use of Naish's products in Texas would not be unjust or unfair. Furthermore, because Naish's products may be purchased in Texas and, in this instance, caused injury in Texas, the state has an interest in ensuring that those products can be safely used by its residents. The court finds that litigating this matter in Texas does not put Naish at a severe disadvantage to Ritzmann. Therefore, the court may exercise personal jurisdiction over Naish without offending traditional notions of fair play and substantial justice.

### III. CONCLUSION

For the foregoing reasons, the court finds that Ritzmann's claim relates to, if not arises from, Naish's contacts with Texas. Furthermore, the court finds that traditional notions of fair play and substantial justice will not be offended by exercising jurisdiction over Naish in Texas. The court, therefore, finds the exercise of personal jurisdiction appropriate.

Nalu Kai, Inc.'s, motion to dismiss for lack of personal jurisdiction is DENIED.

Signed at Houston, Texas on October 30, 2007.

_____
Gray H. Miller
United States District Judge